The first case for argument is 22-1393 Massimo v. Sotera. Mr. Helm, welcome back. Thank you, Judge Coates. It is an extreme pleasure. And thank you, and may it please the Court. The Board committed both factual and legal errors in rendering the judgment holding Massimo's county claims obvious. I'm going to be discussing the legal issues here today because the Court may fix that error and reverse the Board's judgment on the purely legal issue of claim construction. There are two separate claim construction issues and a third contingent issue if the Court agrees with Massimo on at least one claim. The context for all of these claim constructions is that the patent discloses, and the claims are directed to, multi-parameter physiological monitoring systems. Counsel, on page 26 of the response brief, the red brief says, Massimo, and they highlight never, argued below that all of the RE-244 patent claims require two non-invasively measured parameters, nor did it sufficiently specify that certain claims must measure two parameters using a signal comprised, and then again they highlight, only of signals from non-invasive sensors. Where in the record did you raise the argument related that, one, all of the RE-244 patent claims require two non-invasively measured parameters, and two, that certain claims must measure two parameters using a signal comprised only of signals from non-invasive sensors? So, Your Honor, the first place would be in the Massimo's parent-owner response, that's APPX 561 to 562, note 7, where we explain what we understood to be the scope of the petition. That being that the petitioner proposed to modify SIDERA, which was a reference primarily discussing blood glucose monitoring, which we view as an invasive technique. And so they articulated the scope of the petition as being directed to SpO2, non-invasive, and invasive blood glucose monitoring as modified to become non-invasive. That's what we understood, and we made that point because we understood the scope of the claims required two non-invasive parameters. During the course of a petition... Oh, wait, but you're not suggesting that that was enough of a preservation for that claim construction. So then, as the proceeding developed, we understood what the scope of the dispute actually was. APPX 676. We pointed out that they no longer were pursuing a theory of SpO2 and blood pressure, two non-invasive monitorings, and distinguishing SIDERA because it is an invasive glucose monitor. APPX 678, where we point out that claims 1 and 13 require non-invasive sensors, plural. APPX 679, where we point out that claims 1 and 13 require non-invasive sensors, emphasized. APPX 681... Wait, wait, wait. I get that non-invasive sensors, but you're talking about two different claims, claim 1 and 13. So you think one should have read into what the plural of non-invasive sensors, that you were making this into a claim construction? Well, it's not that it was a claim construction. We just didn't feel as a factual matter that they had presented an argument that had two non-invasive sensors, and that's why we have it as plural. And so in terms of the waiver argument, which is, I think, where your Honor's question goes, the Board recognized that this was an issue that we had raised. So at APPX 37, they recognized that we had argued that the petition, our view was that the petition had previously presented two non-invasive... Our understanding of the petition was that it presented an argument involving two non-invasive parameters, meaning that they had... What was the page site of the petition? APPX 37. Okay. I'm looking at it. And here the Board says, we don't agree that the petition proposed to modify SIDERA's invasive blood glucose monitor into a non-invasive monitor, and instead only proposes a non-invasive PULXSAT signature for SP02. And they go on to the next page, where they make the finding of one parameter. How does this go to the claim construction argument about two? Well, on APPX 56, again, it would be very unusual to find a waiver where the Board expressly addressed the issue. And they say, we recognize panel owners' argument that claim one recites a non-invasive sensor, but use of a non-invasive sensor within a sensor set 102 to monitor SP02 does not preclude use of an invasive sensor within the same sensor set to measure blood glucose. So our argument had always been that it requires two non-invasively measured parameters. We didn't present it as a claim construction issue because it was a factual issue. Whether or not the scope of the claims required that would be a factual issue. But based upon the Board's decision here about the scope of the petition, we believe the Court can resolve the issue on claim construction, properly construed claims. Now, I don't think there's any dispute for at least some of the claims. Claims 13, which expressly lists two different parameters depending upon the same one or more signals from one or more non-invasive sensors. I don't think there's any dispute that we did raise those issues below. I think maybe the main dispute is whether we raised... I'm sorry, which issue are you saying that you raised below? We raised the issue of the claim construction for claim 8. In claim 13, we raised that as a separate issue below and made separate arguments about that below. About what exactly? About what kind of sensor is required for the measurement of the parameters. Given your numbering, do you disagree with the red briefs argument at 42 that you never argued below that claims 1 to 7, 10 to 12, 15 to 18, and 24 to 26 require two parameters measured by a non-invasive sensor? I don't agree with that. That's the arguments that I just pointed to you, too. In the SIR reply, where we're arguing that claims 1 and 3 both require non-invasive sensors, plural. That's the issue as we presented it, and I think that's the issue as the board addressed it. The board understood that our argument had been that you need to have two non-invasive sensors to meet those claim limitations. The board disagreed and said, no, you only need to have one. That's APBX 56. They recognized our argument, and they addressed it. Right, but they understood your argument as the claim reciting a non-invasive sensor, and then they said, okay, well, the proposed combination would have a non-invasive sensor to monitor the oxygen saturation. I don't think the board understood your argument as you're making it today, because what you cited in the SIR reply, it gets close, but it doesn't quite come out and make the argument that the two measurements each have to be determined from a non-invasive sensor. Because it didn't quite spell it out like that, I don't think the board understood it like that. Because the board said, okay, patent owner is saying that Sidara has an invasive sensor, and that doesn't meet the claims, because the claim needs a non-invasive sensor, while the proposed combination will have a non-invasive sensor. We can just move right past this argument. That's my understanding of how the board understood this. Then the question is, did you actually say something here that's clear enough that the board, through everything that it had to face here, was clearly on notice that it had this extra argument that every single parameter of the two parameters has to be coming from a signal from a non-invasive sensor? I would say for at least the claims eight and the dependent claims and 13 independent claims, I don't think there's any dispute that that argument was made below sufficiently. Because the argument that was made below was that because of the way the claims are structured, claims 13 expressly requires two parameters measured from the signal, the antecedent basis of the signal. It uses the same antecedent basis from the same non-invasive sensors. So that's the argument we made below. I don't think there's any dispute that that issue was raised. For claim eight, it's similar because it takes the antecedent basis for the signal from the same non-invasively measured signal in claim one and determines a second parameter. So the argument that we made below was that there was an antecedent basis that linked the non-invasive sensor back to the claim eight and its dependent claims. So your clock is running. So you said you had three things to raise with us. The second issue has to do – so I'm happy to go into why we think that the claim construction for the claims, in particular claim eight and claim 13, would require two non-invasively measured signals. And the reason why that would lead to reversal if the court agrees with us is because of what the court found on APPX 37 about the scope of the petition, which only presented one invasive and one non-invasive signal. So as a matter of law, it would be insufficient to establish obviousness in the court to reverse on those grounds. The second claim construction issue has to do with the means-plus-function analysis for claim 18. We believe that that claim should be given a means-plus-function construction, and we raised that issue in our briefing. The court – the board found that the claim 18, despite using the words means-for, is not deserving of a means-plus-function analysis. Right, because it doesn't just say means-for, right? It says physiological sensor means-for. And so I guess that raises the obvious question, do you think the term physiological sensor is insufficient structure? Well, the complete claim limitation is physiological sensing means, and then it continues on, for outputting a signal responsive to a physiological condition of a patient. Right, so the question is, do you think that the term physiological sensor is indefinite when it comes to the following functions of outputting a signal responsive? I don't think that that has this physiological sensor means, a means-for. I don't think that has a single meaning. I mean, we have plenty of cases where we've said, okay, memory means-for, that's not 112.6. Voltage source means for providing a voltage, that's not 112.6. But the word means in those situations do no meaningful work. They don't make an otherwise definite claim indefinite such that we have to turn to 112.6. And so that's why clearly the board saw physiological sensor means in the same way as those cases. I mean, you've got other claims right here. I don't know. Claim one, it talks about a non-invasive physiological sensor configured to do a couple different functions. I'm going to guess you don't think that claim one is indefinite or should be understood as a means-plus-function limitation. It should not be understood as a means-plus-function. It's not indefinite. That's correct. Right. So why isn't there some strong parallelism to think about claim 18 with physiological sensor means for doing function X in the same way as we understand claim one's physiological sensor for doing function X? Well, that's because Congress gave away for the paranoid to draft claims related to that particular using the means-plus-function claim language. And that's what Massimo did here. Do you think that it's possible, though, to use definite structure and then tack on the word means at the end of it and that it's not a means-plus-function limitation? Or do you think it's always a means-plus-function limitation every time you use the word means, even if there's super-definite structure right there in front of the word means? I think, Your Honor, that the court's precedent clearly says that you have to look at the claim and look at the claim language to determine that determination. So that's definitely what the court said in Williamson. I don't think that is an irrevocable presumption, but it does create a presumption. And so here the presumption, we don't feel it was overcoming the presumption. The determination was based upon an expert declaration. It's a single sentence that just says physiological sensor means just means physiological sensor. But the expert, when asked, couldn't explain what a physiological sensor was, how many sensors might be involved. So they're basic questions about the scope of that claim term that are answered by the specification in this case. So it's your position that physiological sensor means is a 112.6 limitation? You believe it should be construed under 112.6? I believe that the entire physiological sensor means for outputting a signal responsive to a physiological sensor. Okay, it has a presumption. You can't confidently say one way or another whether this claim is a means-plus-function claim or not? Yeah, I believe that this is a means-plus-function claim. We believe it's a means-plus-function claim, yes. We believe there's a presumption. We're not trying to play a game here. We believe there's a presumption, and we believe that it should be given a means-plus-function construction in this case. If it was given a means-plus-function construction, it would raise the same issues because there's no non-invasive. We mentioned in our briefing there's no non-invasives. There's nothing but non-invasive sensors mentioned in the specification or disclosed in the specification. So it would raise the same issue in terms of the scope of the petition. Properly construed as a means-plus-function claim. How many references were cited in this patent application? There are a lot, and I will tell you— I mean, it looks like the list of references is longer than the written description itself in terms of number of pages. Judge Chen, it is— I mean, we're talking like 800 references. I will tell you there are— 99% of them submitted by the applicant. I'm happy to respond. I know I'm getting into everybody. Do you think that's examiner-friendly? Your Honor— We could define that as a document dump on the examiner, right? Absolutely not. In this case, I will tell you that the reason for that is, one, it's a very, very crowded field. And two— It is a very, very crowded field. I agree with that. Massimo has been subject to repeated attacks on this ground. And so now Massimo tries to disclose as much as possible. In past court cases, Massimo has been repeatedly accused of inactive conduct for hiding references or for other things. And so now Massimo has. I believe—my understanding is the practice is to disclose with the goal of making sure that the record is complete. It's not meant to be a document dump in any way. Thank you. Thank you, Judge Chen. Good morning, Your Honors. Good to be back. My first appearance since COVID, so. The board engaged in the claim construction on the primary issue, and it followed Phillips and it followed Vitrionics to look at the specification of the claims and to construe the claim. And it, in our strong view, got it right. The estimates of their grounds— Wait, are you agreeing with your friend that there was a claim construction— —more than one on the basis? No, we disagree there, Your Honor. So the first time they— What kind of construction are you talking about? The delay—the primary construction was parameter-specific delay or suspension period of time. Okay, well, that's one. I don't think you got it. No. No. So I'll leave that one go. Sounds like that's not of interest. So as to the one that a lot of the opening argument was talking about, the first time they raised anything about the same signal, the same signal leading to the measurement of two parameters was in the patent owner response. They did not argue in that brief that there were one non-invasive sensor to measure two parameters. The first time that argument appeared was in their surreply at the end of the case. Neither us nor the board appreciated they were even making— Well, irrespective of that, your friend pointed us to a few pages in the final written decision, including the blurb on page 56. So why do you think—so it looks like the board took something out that is arguably related to the argument they're making today. So why don't you read it like that? So my view of what the board was thinking, and it's what I think the board was thinking, of course, is that they were arguing same signal, two parameters, because what the board found with Sidera in the combination with other sensors was that you would combine a non-invasive for glucose and a non-invasive for SpO2, for example. So that was tracking the argument for their patent owner response. They had never made the argument that one sensor, one non-invasive sensor, would measure two parameters. The first time that argument was raised was in their surreply, for sure. I have no doubt about that answer. And that's, Judge Wallach, to your point, that's the briefing that you're quoting from us. The board addressed it, though. I'm sorry, what? The board addressed it. The board didn't say this is a waived argument that was raised in the surreply. They did not, Your Honor. They addressed the same signal argument. They did not address the one sensor non-invasively measuring two parameters. That was not addressed in the board's decision. Let me be clear that in the background of the 244 patent, sensors that measure one sensor can measure SpO2, pulse rate, and up to three additional parameters. Look at column one of their patent. If they had raised this argument, it would be a non-issue that the prior art disclosed. One sensor measuring not only two parameters non-invasively, but five. So if that issue had been raised, there would have been an easy answer to it. This court's precedent, which they cite at page one of their opening brief, Malincrop. So they cite the case of Malincrop v. Mossimo, 147 Fed, it's appendix 158, but it's Malincrop versus Mossimo, this court's precedent, where this court, in one of their other cases, talks about one sensor measuring SpO2 and pulse rate non-invasively. This is rote technology, what they're talking about now, and they didn't raise it. And if they had raised it, the answer would have been simple, that one sensor could measure two parameters non-invasively, same signal. This patent was directed to a monitoring system, a processor that had initiated an alarm, hit a delay. That's what the patent was about. This patent was not about sensors. We're now on appeal, arguing about whether sensors give patentability to these claims, when the sensor technology was literally, I hate to use the phrase, old as the hills. Your proposed combination, though, used an invasive blood glucose sensor in combination with a non-invasive SpO2 sensor, right? That is what the board ultimately found, because I think that's what the board thought the target was, that they were knocking down. The broad teachings of Sidera. So what we're trying to figure out right now is whether or not the other side preserved an argument, or how to interpret what they said in their SIR reply, you know, around A678 to A680, and whether they adequately preserved an argument that your proposed combination fails, because there's a requirement in the claims to have both parameters measured by non-invasive sensors. So the first response is we believe the argument was waived. So that's the only thing we have to figure out right now on this score. Not whether, not other arguments you could have made and raised and all of that. So can you just focus on the actual argument that's here before us in this appeal? So, first of all, we believe the argument is waived. Second, we made arguments that were of record and that the board actually cites that Sidera teaches in paragraph 73 of Sidera. This is an argument we made. I'm not telling you what we could have said. This is what the board found and what we did say, and that is in paragraph 73 of Sidera, it talks about one sensor measuring multiple parameters. The board goes into the subsidiary finding. I'm lost here. You seem to be saying that the board has already addressed this argument that you say was waived by making a finding already in its final decision that apparently it didn't have to, that all of the sensors in the combination are non-invasive. I just want to know about waiver. I understand. You keep blowing past waiver and wanting to talk about other things. Fair enough. So we believe it's waived. Because? Because they didn't raise it until their certify. And even when they raised it in their certify? They did raise it in certify, and the board addressed what they thought was the argument in the certify, so the board did not think whatever was in the certify was waived. Now the next question is, okay, we have to look at the content of what was actually raised in the certify. Did they make the argument they're making on appeal or not? That's what I want you to focus on. That's what I want to hear you address. So we disagree that the board addressed what they raised in their certify, first of all, because the board did not. Let's start with the certify. Yes. Can you answer Judge Chen's question? Yes. In the certify, there's one paragraph, and I understand your frustration, so let me try to address it. I'm frustrated. I can tell, and I don't want to frustrate you. Okay. I mean, let's read the sentences together. Let's just look at A680. However, these claims require the same signal, not just the same sensor set, to determine two different measurements. Moreover, Sotera's sensor set signal is from an invasive monitor, whereas claims 1 and 13 are directed to noninvasive sensors. All right. So an argument that's being made by Mr. Helm here is that the claims, they are putting everyone on notice. You can't rely on a combination that uses one noninvasive sensor and one invasive sensor because the claims require noninvasive sensors, plural. Correct, and that's how you know the board didn't appreciate the argument in their certify. We didn't either. The board never would have argued that you would combine a noninvasive sensor glucose with invasive if they understood their argument. We didn't understand it. The board didn't understand it. That's what their decision reflects. They're arguing the board is combining a noninvasive with an invasive. If they understood their argument to be that one sensor noninvasively measured two parameters, they wouldn't have made that conclusion. Okay, but was the board unreasonable in the way they read this argument? That's the question we have in front of us. You seem to be acknowledging yourself that right here, the patent owner made an argument that the claims require multiple noninvasive sensors. The patent owner raised an argument in their certify, which picked up on the same signal argument from their patent owner response. We thought, and I can tell the board thought, that they were advancing the same signal argument. What they now say on appeal is that they were advancing the same sensor measures two signals, two parameters, noninvasively. We didn't appreciate that, and the board didn't appreciate that. Right, and I'm trying to find out from you, why can you say that you were reasonable in your reading when the argument clearly says the claims are directed to noninvasive sensors? We didn't appreciate a claim. I mean, this is a claim construction issue is what they're talking about. Do the claims require one sensor to measure two signals noninvasively? So I wouldn't have expected that they were raising a new claim construction issue in a certify. I just wouldn't have, Your Honor. And we didn't appreciate it, and the board didn't appreciate it. You're asking, are we reasonable? Should the board and Satara have appreciated that they were raising this new argument in one paragraph out of this volume of briefing, and we didn't appreciate it. But if you think that they raised it and that it was sufficiently raised, to me the remedy in that is, first of all, you know what I think that the board found addresses it. But if not, then it would be a reverse in the man for further proceedings to get into what the prior art is, which is undeniably. You can ask him if he stands back up. The prior art undeniably is one sensor measures up to five parameters noninvasively. That's the prior art. I mean, we're arguing about something that has no distinction in the technology that was raised in the certify brief, and we didn't appreciate it. And maybe we're at fault for not appreciating an argument in a certify. But isn't your argument really that the argument in the certify follows logically from prior arguments, and that to interpret it otherwise is to say that this is a right turn or a left turn? When you look at it, you say, yeah, this follows from what was said before. Your Honor, we certainly did not expect that they were arguing the same sensor measures, two parameters noninvasively, because that was the prior art. We just did. We thought it was the same signal. That's what we thought. And, Your Honor, maybe we're wrong, but we didn't appreciate it, and the board didn't appreciate it. That oral argument, was the same signal discussed? I don't recall it, no. I don't think so. But, you know, that's not something we focused on. But, no, I don't recall that that was discussed. Certainly not. I can tell you this wasn't discussed. Not that one sensor measures two parameters noninvasively. That was not discussed, to my knowledge. We just didn't appreciate the issue. And maybe it's our fault, but I didn't see it, the board didn't see it. And I've got to say that if they thought this was a good claim construction issue, that even though Sidero is right on top of their patent, the saving argument is that they have a sensor that measures two parameters noninvasively. If they thought that was the winning argument, how was that not in their patent owner preliminary response? How was that not raised in their patent owner response? How does that find its way in a SIR reply? I mean, that's not the sign of a winning argument. Do you want to say a couple words about the means plus function issue that you were going to talk about? Sure. Yes. So, you know, as a patent practitioner, when you see means, we all understand that it could invoke 112F. It says physiological parameter means. That would cover any sensor, right? I mean, so the one thing that all sensors have in common is they measure a parameter, they send a signal. That's what our experts said. But if you look at the patent, I don't know how you would assign structure beyond measure a parameter, send a signal. So, you know, our view is that it's either how we've construed it and how the board construed it or it's indefinite, which is a district court argument. I can't say to the PTAB in an IPR proceeding that it's indefinite. That's not an argument I can raise. Why would you say it's indefinite? Why wouldn't you just say it's either the way you construed it or it's a 112.6 claim? And so, therefore, you go and look at the corresponding structure and the specification for performing the decided function? There's no structure that you can assign beyond what we did. So we think we're right. To be clear, we think that we're right, that in line with a long line of cases that this court has, where one skill in the art understands the term sensor, physiological sensor means here. You measure a parameter, you send a signal. From there, a processor deals with that. So we think we're right. That's what the board found. We're in line with a long line of cases where this court has found voltage means, display means, memory means, GPS means. We believe that this has sufficient structure. Measure a parameter, send a signal. Beyond that, I mean, they've never argued what structure, and I know it's our burden, but what structure would you add to it? They've never said what structure you'd add. I don't know what you'd add. We've looked at the patent. Is there a reason why you switched experts? Yes. In the middle of the IPR? There is. Our original expert was extremely intelligent. He was an older gentleman, and this happened in the middle of COVID, and he was affected by it, and he lost his focus. It was sad. And so they deposed him. They got to do it, but we had to bring in a new expert just because our other expert was affected by COVID. It was sad. I do not. Thank you, Your Honors. We still have two minutes, everybody. Two minutes. In terms of raising the arguments, I think it's undisputed that we raise this argument of both measurements in Claims 8 and 13 need to come from the same signal. I think it's also undisputed that our view, everyone understood that at least one of the signals had to be noninvasive. So Claims 8 and Claims 13 narrowed that to mean that both of them had to be noninvasive. I don't think that there's any way to avoid that. And I think in particular, as we explain in our reply brief, we have a separate heading for the limitations of Claims 8-9, 13-15, and 19-22 where we walk through that. So I think that that argument. I'm sorry. Which pages of your response to your reply? That would be 680 in the survey reply. Yeah. Where we argue that the combination of, we explain their argument, which is the combination needs the signal limitation because it uses the same sensor set to determine two measurements, blood glucose and SpO2. Right. However, these claims require the same signal, not just the same sensor set to determine two different measurements. So that's a continuation of what you argued in your patent owner response about it needs to be the same signal, not two separate signals, and what is the sensor set 102 in the reference? That's correct. Well, this is the first time, actually, that we had heard about the sensor set theory. So we're responding to their sensor set theory, and our response is that that sensor set can't meet the claim limitation because it's from an invasive monitor, whereas Claims 1 and 13 are directed to noninvasive sensors. And so Claim 8 depends on Claim 1, so both of them have that same implication of a noninvasive sensor or the same signal. And that's what the board addressed in their opinion at 54 and 55. They expressly addressed our argument that it was from an invasive monitor, not a noninvasive monitor. Thank you very much. Thank you.